PEOPLE *v.* DODGE.

1. CRIMINAL LAW—DUE PROCESS—USE OF ADMISSION.
   Detention of defendant in May, 1962, for 11 hours before he made admissions of crime without permitting him to call his wife or reach an attorney does not contain the element of fundamental unfairness that is essential to a breach of due process where there is no showing that these refusals were persuasive in obtaining the admissions in question, his wife was not at home at the time he asked police to call her and he told them so, and he said he had no particular lawyer in mind.

2. SAME—DUE PROCESS—DELAY IN ARRAIGNMENT—CONFESSIONS.
   Unnecessary delay in arraignment of a person apprehended on May 2, 1962, renders unlawful a confession made during the period of delay only when the delay was shown to be for prolonged interrogatory purposes and without proven justification.

3. SAME—DUE PROCESS—USE OF ADMISSIONS.
   Defendant who was intelligent and knowledgeable in the ways of the law when apprehended for armed robbery in May, 1962, could not claim the same inadequacies of process as could an immigrant defendant, ignorant and with a language barrier, where defendant was held for about 15 hours by police at various places and placed in identification line-ups, and was not permitted to talk with a lawyer or notify his wife of his detention, and then made statements used in evidence at his trial (CLS 1961, § 750.529).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 545, 556.
   Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation, 10 ALR3d 1054.
[2] 29 Am Jur 2d, Evidence § 547.
   Admissibility of confession as affected by delay in arraignment of prisoner, 19 ALR2d 1331.
   Admissibility of pretrial confession in criminal case—Supreme Court cases, 1 L Ed 2d 1735, s. 4 L Ed 2d 1833, 12 L Ed 2d 1340, 16 L Ed 2d 1294.
[3] 29 Am Jur 2d, Evidence § 543 *et seq.*

Appeal from Genesee; Parker (Donn D.), J. Submitted Division 2 February 29, 1968, at Lansing. (Docket No. 3,415.) Decided June 26, 1968. Leave to appeal denied April 15, 1969. See 381 Mich 815.

Clinton M. Dodge was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Assistant Prosecuting Attorney, for the people.

*Jerome F. O'Rourke,* for defendant.

J. H. GILLIS, J. Defendant Clinton M. Dodge was found guilty by a jury on October 3, 1962 of the armed robbery[1] of the Durant Hotel located in Flint, Michigan, and was sentenced to 27-1/2 to 50 years in prison.

On October 26, 1966, this Court granted the defendant's delayed application for leave to appeal and requested the trial court to make a determination upon a separate record of the voluntariness of defendant's statements admitted in evidence at trial, pursuant to *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331. The trial court was also requested to determine whether the defendant was illegally detained before being taken to a magistrate, contrary to the statute[2] and the rule laid down in *People* v. *Hamilton* (1960), 359 Mich 410. The order granting the application for leave to appeal specified that the decision of the trial court was to be a final judgment for the purposes of review.

The trial court conducted a *Walker* hearing which commenced on February 2, 1967 and concluded on February 3, 1967. The trial court in a written opin-

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).
[2] CL 1948, § 764.26 (Stat Ann 1954 Rev § 28.885).

ion set forth a brief history of the case followed by his opinion:

"The testimony taken during the hearing, pursuant to *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331, discloses:

"(1) The defendant was arrested at about 4 a.m. on May 2, 1962.

"(2) He was taken to the Michigan State police post at Pontiac, where he remained until approximately 8 a.m. During this time, he made a request to see his wife, which request was refused by the police.

"(3) The defendant was returned to Flint at about 8 a.m., and arrived at Flint at about 9 a.m.

"(4) He was intermittently questioned by Flint police for some time after 9:30 a.m. until 3 p.m., when he was brought on a line-up for possible identification. He was taken before a line-up also at about 7 p.m.

"(5) During this time, defendant made inquiry to see legal counsel, and also, asked Flint police that his wife should be called.[3] Both requests were refused by Flint officers.

"(6) Some time after 7 p.m. on May 2, 1962, the defendant made certain statements which were admitted in evidence at the trial of this matter.

"(7) On May 3, 1962, he was arraigned in the municipal court of Flint.

"In *Hamilton,* the Court indicated that the aim of the requirement of due process is to prevent fundamental unfairness in the use of evidence, whether true or false. The detention of the defendant for a period of approximately 11 hours in Flint prior to the time of receiving and obtaining his admissions does not contain the element of 'fundamental' unfairness.' Although the defendant was not permitted to see either his wife or to reach an attor-

---

[3] The record shows that defendant didn't ask for any specific attorney and in fact told the officers that he had no particular attorney in mind. He further advised officers that his wife wasn't then home but that she would be home later that day.

ney, there is no showing that either of these refusals by the police authorities were persuasive in his making admissions that were used at trial.

"The detention of the defendant was not unlike that depicted in *People* v. *Harper* (1962), 365 Mich 494, where a period of some 12-1/2 hours elapsed from the time that Harper was arrested, until such time as statements were taken from him. As is stated in *Harper:*

" 'None of the circumstances which so strongly compelled our finding Hamilton's confession was involuntary is present in the case at bar. Nothing in this record suggests that the delay of 12-1/2 hours between arrest and arraignment was for the "manifest purpose \* \* \* of sweating a confession" from defendant, as we found the purpose to be of Hamilton's prolonged detention.'

"In *People* v. *Carlton* (1966), 5 Mich App 20, in a further interpretation of *Hamilton,* the Court said:

" 'A reading of *Hamilton* and of subsequent cases interpreting and explaining it, leads to the conclusion that it is unnecessary delay in arraignment "when done for prolonged interrogatory purposes without proven justification for delay" which renders unlawful a confession made during such a period.'

"In the present case, the defendant was detained prior to arraignment for purposes relating to investigation and to his identification in 2 line-ups by the victims of the crime. There is no showing that there was any effort to 'sweat out' a confession from the defendant. The defendant is a man of unusual intelligence, and is knowledgeable in the ways of the law, and cannot claim the same inadequacies as the defendant in *Hamilton.*

"There is no showing of violation of CL 1948, § 764.26 (Stat Ann 1954 Rev § 28.885), or of any unnecessary delay prior to his arraignment before a magistrate.

"This court therefore concludes that the statements obtained from the defendant Dodge were voluntarily made, and that he was not illegally detained prior to arraignment before the magistrate on May 3, 1962."

We agree with the trial court's opinion and affirm.

McGREGOR, P. J., and A. C. MILLER, J., concurred.